United States District Court
Southern District of Texas
**ENTERED**
August 21, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. H-17-2423 |
| AUBREY LEWIS WARD, | § § | |
| Defendant. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending and referred by the District Judge is Plaintiff's Motion for Summary Judgment (Document No. 14), in which Plaintiff seeks summary judgment on both its claims for money had and received and conversion, and on its recoupment defense to Defendant's counterclaim(s) for breach of contract and declaratory relief. Having considered the motion, the response in opposition, the reply, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment (Document No. 14) be DENIED.

## I.    Background

This case was filed by Plaintiff John Hancock Life Insurance Company ("John Hancock") seeking to recover $720,691.38 in overpayments that were made to Defendant Aubrey Lewis Ward ("Ward") over a period of nine years (from 2008 through 2016). John Hancock has asserted claims against Ward for money had and received, unjust enrichment, restitution, conversion, and declaratory relief. Ward has, in response, filed a counterclaim for breach of contract and declaratory relief. John

Hancock now seeks summary judgment on its claims for money had and received, and conversion, and summary judgment on its defense of recoupment to Ward's breach of contract and declaratory judgment counterclaim(s).[1]

## II.     Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[2]  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548.  Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential

---

[1] John Hancock's Motion for Summary Judgment was filed in January 2018, but consideration of that motion was stayed until August 13, 2018, pending the parties' efforts at settlement.

[2] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership,* 520 F.3d 409, 412 (5th Cir. 2008).

component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

## III.    Summary Judgment Evidence

Ward has objected to the Declaration of Kristen Flaherty, submitted by John Hancock in support of its Motion for Summary Judgment. According to Ward, Flaherty's Declaration, which John Hancock uses to authenticate certain documents, is ineffectual because many of the documents are not John Hancock's business records. Further, Ward maintains that Flaherty does not state in her Declaration how she has any personal knowledge about John Hancock's "procedure over nine years," John Hancock's "change of name, annuity payments and how the annuity payments were made dating back nine years," or the mistake that was made resulting in the overpayments to Ward. Ward therefore, "asks that the documents attached to Flaherty's Declaration not be considered . . . and Flaherty's statements regarding Hancock's inner business dealings and how the alleged mistake was made be stricken as inadmissible evidence." *See* Ward's Response to Motion for Summary

Judgment (Document No. 16) at 3. John Hancock, in response to those evidentiary objections, maintains that the records/documents attached to Flaherty's Declaration are its business records regardless of whether it created them because they are maintained in the ordinary course of its business. As for Flaherty's statements in her Declaration about the mistake that resulted in the overpayments on the "96 annuity," John Hancock argues that Ward's objections are ineffectual because he has admitted that he received the overpayments.

Ward's objections to the exhibits attached to Flaherty's Declaration are OVERRULED. Those documents, whether authored by John Hancock or not, have been shown to be John Hancock's business records within the meaning of FED. R. EVID. 803(6). As for the majority of the contents of paragraph 11 of Flaherty's Declaration, in which Flaherty explains how the overpayments were made, Ward's objections are SUSTAINED. Flaherty states in paragraph 11 of her Declaration that "John Hancock entered the wrong payment range into its payment system for the 496 annuity. As a result of the error, John Hancock's system automatically generated and made additional payments to Ward on the following checks: 019-250675, 019-408644, 019-559488, 019-707005, 019-848476, 019-990186, 019-1131639, 019-1267821, and 019-1399249 ("Checks"). Each check was for [ ] $80,076.82. John Hancock never intended to pay Ward more than he was entitled to under annuity 496." But, nothing in Flaherty's Declaration either shows that she has any personal knowledge of that information or establishes how she obtained, or could have obtained, knowledge of that information. That part of Flaherty's Declaration is therefore inadmissible. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

## IV.    Discussion

Prior to consideration of the particular claims and defenses on which John Hancock seeks summary judgment, it must be noted that there is no dispute, whatsoever, that John Hancock overpaid Ward 720,691.38, on an annuity contract, No. 4039496-7, that was issued to him on August 12, 1987.  That "96 annuity" called for five annual lump sum payments to be made to Ward from November 9, 2003, through November 9, 2007.  Those five annual lump sum payments were made, but John Hancock continued to make payments to Ward from November 2008 through November 2016.  Those overpayments, over that nine year period, totaled $720,691.38.  John Hancock seeks to recover that amount with its claims of money had and received and conversion.  John Hancock also seeks to recoup the amount of its overpayments, and counter Ward's breach of contract and declaratory judgment counterclaims, from the amounts it owes and will continue to owe Ward as payments on another annuity contract, No. 4039497-5 (the "97 annuity").  Ward, in response to John Hancock's Motion for summary judgment on its money had and received counterclaim, relies on his affirmative defenses of voluntary payment and detrimental reliance.  He also argues that John Hancock cannot recoup the overpayments on the "96 annuity" from the payments still owed on the "97 annuity," because those are separate annuity contracts.

### A.    Money Had and Received

A claim for money had and received is an equitable claim that "may be maintained to prevent unjust enrichment when the defendant obtains money, which in equity and good conscience belongs to the plaintiff." *Spellmann v. Love*, 534 S.W.3d 685, 693 (Tex. App. – Corpus Christi-Edinburg 2017, reh'g denied, pet. denied).  "To recover on a claim for money had and received, a plaintiff must show that the defendant holds money that in equity and good conscience belongs to him.  Such

5

cause of action is not based on wrongdoing, but, instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightly belongs to another.'" *XTO Energy Inc. v. Goodwin*, ___ S.W.3d ___, No. 12-16-00068-CV, 2017 WL 4675136, at *11 (Tex. App. – Tyler, Oct. 18, 2017) (internal citation omitted), *pet. for review filed* (Jan. 16, 2018). A claim for money had and received has a two year statute of limitations. *Friddle v. Fisher*, 378 S.W.3d 475, 483 (Tex. App.– Texarkana 2012, pet. denied); *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 883 (Tex. App. –Houston [14th Dist.] 2012).

Here, John Hancock seeks to recoup overpayments that were made as long as nine years ago. Given the two year statute of limitations on a money had and received claim, John Hancock can prevail, if at all, only on a money had and received claim for the overpayments that were made within two years of it filing this lawsuit. John Hancock appears to concede as much in its briefing. *See* Motion for Summary Judgment (Document No. 14) at 2, 11-12; Reply (Document No. 19) at 5.[3]

With respect to those two annual payments, from November 2015 and November 2016, for which a money had and received claim would not be barred by limitations, Ward appears to acknowledge that he was not entitled to those payments. Ward does argue, however, that his affirmative defenses of voluntary payment and/or detrimental reliance preclude summary judgment for John Hancock on the money had and received claim. Under the voluntary payment defense, "[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered merely because the party at the time of the payment was ignorant of or mistook the law as to his liability." *XTO*, 2017 WL 4675136, at

---

[3] John Hancock does not argue that the limitations period should be extended through the discovery rule.

*11 (Tex. App. Oct. 18, 2017) (citing *Pennell v. United Ins. Co.*, 150 Tex. 541, 243 S.W.2d 572, 576 (1951)).  In addition, where there is a mistake of fact, recovery of funds may be had on a restitution-type claim as long as "the party to whom the payment was made has not materially changed his position in reliance thereon." *Bryan v. Citizens Nat'l Bank in Abilene*, 628 S.W.2d 761, 763 (Tex. 1982).  Such a material change in position is required for a defense of detrimental reliance. *Bagwell v. BBVA Compass*, No. 05-14-01579-CV, 2016 WL 3660403 at *3 (Tex. App.–Dallas July 7, 2016).

Ward's defenses, like John Hancock's money had and received claim, are equitable in nature. *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005) (discussing voluntary payment rule and detrimental reliance as equitable defenses).  That means that even if there was evidence to support John Hancock's money had and received claim for the 2015 and 2016 overpayments on the "96 annuity," that evidence would have to be weighed and balanced against Ward's evidence in support of his voluntary payment and detrimental reliance defenses. *See Edwards v. Mid-Continent Office Distributors, L.P.*, 252 S.W.3d 833, 839-40 (Tex. App.–Dallas 2008) ("detrimental reliance is one of the factors that a trial court considers in balancing the equities in a claim for money had and received"); *see also Miga v. Jensen*, 299 S.W.3d 98, 105 (Tex. 2009) (finding that Court of Appeals properly weighed the equities in connection with plaintiff's equitable claim for restitution and defendant's voluntary payment defense).  The equities in this case, given the inadmissible portions of Flaherty's Declaration, do not weigh so clearly in John Hancock's favor to warrant summary judgment on its money had and received claim.  Without those portions of Flaherty's Declaration, John Hancock's summary judgment evidence consists of a 1987 settlement agreement that called for annuities to be purchased for Ward, as well as account statements and checks showing that payments

7

and overpayments were made (Document No. 14-1).  There is no evidence as to how or why the

overpayments were made, no evidence as to why it took Hancock so long to discover the

overpayments, and no evidence, whatsoever, about any other terms of the 96 annuity contract.

Ward's summary judgment evidence, in contrast, consists of the following statements in his

affidavit:

> 3.     I did not receive a demand from Hancock for the return of any annuity
> payments until shortly after June 21, 2017.  A true and correct copy of the letter I
> received from Hancock is attached hereto as Exhibit B1 and incorporated herein.
>
> 4.     At the time of Hancock's demand, I made a decision to not return the
> payments because I had a reasonable doubt as to Hancock's right to the payments.
> I believe Hancock's continued, voluntary payments for nine years with full
> knowledge of all the facts, and there being no compulsion, fraud, duress or deception,
> vitiated any right they might have to the payments.
>
> 5.     I did not review the payment schedules for the annuities in November 2008
> when I received Hancock's payment.  Despite Hancock's suggestions, I was not
> sitting at my home waiting for checks to arrive in the mail and waiting to get my
> hands on any over-payments Hancock might make.  I was dealing with my own
> business and personal adversities at the time and trusted a reputable company such
> as Hancock would correctly pay out the annuities entered into years before.  Starting
> in 2003 and continuing until 2016 I had my hands full with health and personal
> issues.  These included a heart attack in 2003; my father's death in 2004; radical
> prostate surgery in 2006 because of cancer in that organ; a procedure and surgery in
> 2011 for removal of bladder stones; knee repair surgery in 2012; placement of a heart
> stent in 2013; subsequently in 2013, double by-pass surgery; the death of my mother
> in December, 2013 with attendant estate matters; a fire in my home in January, 2014;
> moving my law office in January, 2015; moving back into my home in February,
> 2015; and my wife being severely injured by lightning in July, 2016.  Thus, I did not
> notice any over-payments in 2008 and by the time Hancock raised the issue, I felt I
> had a good faith basis to claim title to the money.
>
> 6.     I relied upon receiving the payments from Hancock and had to make plans to
> meet my obligations, taking into account that I would receive a lump-sum every year
> on November 9 and a smaller amount on the 9[th] day of every month.  Sometimes I
> had to use them to subsidize my family's living expenses and my law practice
> because of the difficulties I encountered as stated above.  Again, I trusted a company
> such as Hancock wold not make over payments on annuity contracts and the money

8

I was receiving was in accordance with the annuity contracts entered into years
before.

(Document No. 16-2). Ward also states in a Supplemental Affidavit how and why he relied on the

payments made by John Hancock from 2008 through 2016 (Document No. 26-1). These statements

in Ward's affidavits support both his voluntary payment and detrimental reliance defenses.

Against Ward's statements in his affidavit, which are to be viewed in this summary judgment

context, in the light most favorable to Ward as the non-movant, the Magistrate Judge concludes that

there is simply a paucity of summary judgment evidence that would support the weighing of the

competing equities in John Hancock's favor. For that reason, John Hancock's Motion for Summary

Judgment on its money had and received claim should be denied.

**B.     Conversion**

"[C]onversion under Texas law consists of four elements: (1) the plaintiff owned or had legal

possession of the property or entitlement to possession; (2) the defendant unlawfully and without

authorization assumed and exercised dominion and control over the property to the exclusion of, or

inconsistent with the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property;

and (4) the defendant refused to return the property." *Hernandez v. ARC Trading Co.*, No. 3:17-CV-

2057-BN, 2018 WL 2017680, at *13 (N.D. Tex. May 1, 2018). There is a two year statute of

limitations on a conversion claim. *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360

S.W.3d 691, 699 (Tex. App. – Dallas 2012).

Here, John Hancock's allegations are that it mistakenly made nine years of payments on the

"96 annuity" that were not owed. Its summary judgment evidence, to the extent it is admissible,

conforms with those allegations and the underlying premise that the payments were made by John

Hancock voluntarily, but mistakenly. There is no summary judgment evidence that Ward did anything other than passively accept the payments. That passive acceptance, standing alone, does not satisfy the wrongful conduct requirement necessary for a conversion claim. *See Hull v. Freedman*, 383 S.W.2d 236, 238 (Tex. Civ. App. 1964, writ refused n.r.e.) ('Conversion involves a taking of property without the owner's consent; hence there can be no conversion where the owner has expressly or impliedly assented to the taking or disposition."). As such, and because John Hancock's admissible summary judgment evidence does not conclusively establish a conversion claim, John Hancock's Motion for Summary Judgment on its conversion claim should be denied.

### C.   Recoupment Defense

Ward has asserted a counterclaim against John Hancock for breach of contract and declaratory relief. That counterclaim is based on John Hancock's stoppage of payments on the "97 annuity." John Hancock, as a defense to Ward's counterclaim(s), maintains that it can recoup the overpayments on the "96 annuity" from the amounts it still owes Ward on the "97 annuity." That defense of recoupment as against the "97 annuity" exists, according to John Hancock, irrespective of any statute of limitations on its affirmative claims, because the recoupment sought is "defensive in nature, and the statute of limitations simply does not apply." *See* Motion for Summary Judgment (Document No. 14) at 11 (quoting *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 33 (5th Cir. 1963)).

As part of its Motion for Summary Judgment, John Hancock seeks summary judgment on its recoupment defense to Ward's counterclaim(s). Ward, in response, maintains that recoupment is not available because the annuity contracts were separate and independent – not a single transaction. Ward also argues that John Hancock is improperly attempting to use a recoupment

10

defense as a way to circumvent the statute of limitations on its own claims.

Ward alleges in his Counterclaim that John Hancock:

> failed and refused to make payments of monthly benefits due to Defendant under the 497 contract. During the months of May through October 2017, Plaintiff should have paid Defendant $6,207.17 per month for each of these six (6) months, but failed and refused to do so. Plaintiff should have also paid Defendant $6,393.39 per month for November, 2017 through present, but failed and refused to make said payments to Defendant's additional damage through December, 2017 in the amount of $12,786.78 (monthly benefits are payable until Defendant's death with the monthly benefit increasing at 3% compounded annually; a new year begins every November 9). These failure constitute a breach of the 497 contract. As a result of such breaches, Plaintiff owes Defendant $43,822.63 as of December, 2017, in addition to other damages described below. . . . Defendant asks the Court for a declaratory judgment holding that the 496 Contract and the 497 Contract are separate and distinct contracts; that benefits for May, 2017 and thereafter under the 497 contract continue to be due and payable . . .

Defendant's First Amended Original Answer and Counterclaim (Document No. 12) at 4. John Hancock asserted, in its Answer , that Ward's counterclaim(s) were "barred, in whole or in part, by offset and/or recoupment." (Document No. 13).

"The defense of recoupment allows a defendant to deduct any amounts accruing to him as a result of the same transaction that forms the basis of the action against him." *Seidner v. Citibank (S. Dakota) N.A.*, 201 S.W.3d 332, 337 (Tex. App. 2006); *see also Bray v. Bray*, No. 04-98-00633-CV, 1999 WL 391874, at *1 (Tex. App. June 16, 1999) ("Generally, recoupment allows a defendant to reduce or rebate part of a plaintiff's recovery on a cause of action because of a right the defendant has arising out of the same transaction from which the plaintiff's suit arises."). Two things must be shown for recoupment to apply: (1) that some type of overpayment was made; and (2) the overpayment arose from the same claim or transaction as the opposing party's claim. *Sommers v. Concepcion*, 20 S.W.3d 27, 34 (Tex. App. – Houston [14th Dist.] 2000).

11

Here, John Hancock relies on the fact that the "96 annuity" and the "97 annuity" arose out of a single transaction – a 1987 settlement agreement that provided for the purchase of two annuities for Ward. While John Hancock is correct that the settlement agreement did require the purchase of annuities for Ward's benefit, it cannot be ascertained on this record, as a matter of law, that the two annuities arose out of the "same" transaction for recoupment purposes. That is primarily because John Hancock has not submitted, and no one seems to have a copy of, either annuity contract. *See* Flaherty Declaration at ¶ 8 (Document No. 14-1 at 2) ("While originals of the 496 and 497 annuities were delivered to Ward, John Hancock has been unable to locate copies of the annuities in its records; they are lost.); and Defendant's First Amended Original Answer and Counterclaim (Document No. 16-1) at 1, ¶ 5 ("records are not presently available because of Hurricane Harvey"). Additionally, Ward's counterclaim is based on John Hancock's stoppage of payment on the "97 annuity," while John Hancock's recoupment defense is based on overpayments on the "96 annuity." Finally, the 1987 settlement agreement, which John Hancock identifies as the "transaction" from which both the "96 annuity" and the "97 annuity" arose, did provide for the purchase of two annuities for Ward, but it also provided for the purchase of annuities for three others – Barbara L. Campbell, Haven Nicole Campbell and Wilson Allen Campbell, III.

Upon this record, where John Hancock has not shown that the "96 annuity" and the "97 annuity" should be considered one transaction for purposes of its recoupment defense, John Hancock's Motion for Summary Judgment on its recoupment defense should also be denied.

## V.   Conclusion and Recommendation

Based on the foregoing and the conclusion that John Hancock has not shown, conclusively

12

and as a matter of law, that it is entitled to summary judgment on its claim for money had and received, its claim for conversion, or its defense of recoupment to Ward's counterclaim(s), the Magistrate Judge

RECOMMENDS that Plaintiff's Motion for Summary Judgment (Document No. 14) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this _21st_ day of August, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE